Christine EVANS, Plaintiff,

v.

TECHNOLOGIES APPLICATIONS
& SERVICES COMPANY,
Defendant.

Civ. A. No. AW 94–1767.

United States District Court,
D. Maryland,
Southern Division.

Feb. 9, 1995.

Mindy G. Farber, Rockville, MD, for plaintiff.

Timothy McEvoy and Ronald W. Taylor of Venable, Baetjer and Howard, Baltimore, MD, for defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff, Christine Evans, brought this civil action against her employer, Technologies Applications & Services Company ("TAS"), alleging sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (count III) and sex and age discrimination under the Montgomery County Code (counts I and II respectively). She alleges that TAS refused to allow her to apply for, and ultimately refused to select her for a promotion for which she was qualified. In count I of her complaint, Ms. Evans also alleges that she was sexually harassed and that TAS discriminated against her with regard to pay and benefits. Pending before the Court is TAS's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment pursuant to Fed.R.Civ.P. 56 and TAS's motion to strike Ms. Evans' affidavit.

The Court has considered the parties' respective memoranda, and any exhibits attached thereto. A hearing on the matter is not necessary. Local Rule 105(6) (D.Md. 1994). For the reasons set forth more clearly below, the Court concludes that TAS's motion for summary judgment as to all counts must be granted.

### FACTS

TAS is a government contractor which builds and supplies high technology equipment for the United States government. Ms. Evans held a temporary full-time position with Aerotek Temporary Services and was assigned to Norden Service Company, Inc. when TAS purchased it on June 11, 1991. On or about June 17, 1991, Gary Houseman, TAS's Quality Assurance Director, recommended that TAS hire Ms. Evans on a full-time basis as an Inspector/Quality Control Analyst in the Quality Assurance Department. TAS hired Ms. Evans, then forty-two (42) years of age, and assigned her to "in-process" inspections.

Overall, TAS gave Ms. Evans good employee evaluations. However, her supervisor, Mr. Houseman, indicated on Ms. Evans' September 18, 1992 Personnel Evaluation Form that she had problems with moodiness. He also indicated that she could improve her treatment of other employees. He felt that the one thing that would impede Ms. Evans' "promotability" was her attitude.[1]

1. Indeed, on February 10, 1993, Mr. Houseman issued letters of reprimand to Ms. Evans and her co-worker, Mr. Samuels, for squabbling with one another. After receiving her letter, Ms. Evans was absent from work for four consecutive days. TAS alleges that Ms. Evans was AWOL, but according to Ms. Evans, she phoned TAS to inform them she would not be at work. On February 18, 1993, Mr. Houseman and, then Quality Control Supervisor, James Thompson wrote an internal memorandum to Tami Fabian, TAS's Manager of Personnel, regarding Ms. Evans' "absence from work and insubordination." Although Ms. Evans knew about the memorandum she neglected to issue a written statement regarding her alleged AWOL status.

In February, 1993, a Quality Control Supervisor ("QCS") position became available at TAS. Contrary to its written policy, TAS did not post the position. TAS gave neither Ms. Evans nor her co-worker Samuels, who held the same title as Ms. Evans, an opportunity to apply. Instead, due to financial constraints, TAS decided to merge the duties of the QCS position into those of the Software Engineering position already held by Mr. Ron Lewis.

TAS selected Mr. Lewis because of his knowledge in computers and computer software and computer codes that linked software to the consoles inspected by Ms. Evans. TAS concluded that Mr. Lewis' understanding of the interplay between computer hardware and software, which both Ms. Evans and Mr. Samuels lacked, made him the only practical candidate for the position. TAS also noted that Mr. Lewis had solid supervisory experience.

Throughout the selection process, Ms. Evans made it known to TAS personnel that she was very interested in the QCS position. She alleges that Mr. Houseman informed her that she he would never promote her to a supervisory position at TAS. Believing that TAS selected Mr. Lewis because he was male and that TAS denied her the opportunity to apply for the position because she was female, Ms. Evans filed a charge with the Montgomery County Office of the Human Relations Commission ("the HRC") on April 21, 1993. In the charge, she wrote:

> I believe I was discriminated against and denied an opportunity to apply for a supervisory position because of my sex (female). I was hired as a temporary (for 11 months) and was made a full-time employee by the Respondent on June 17, 1991. My position title was Senior Electronics Mechanical/Inspector, Quality Assurance Section. The former Quality Assurance supervisor (James Thompson) was replaced by another male (Ron Lewis) on February 27, 1993. Mr. Lewis was a Software Programmer prior to being promoted to Software Quality Assurance Engineer/Supervisor, and had no former Quality Assurance experience. I was qualified for the supervisory position. The position vacancy was never advertised or posted for competitive selection, and this procedure is contrary to the Respondent's hiring policy.
>
> I believe the Respondent denied me an opportunity to apply for a supervisory vacancy based on my sex (female).

Based on Ms. Evans' charge, the HRC (EEOC) began its investigation.

On May 2, 1994, Ms. Evans amended her original charge, adding "I also believe my age (44) was a factor in my non-selection for the supervisory position. Mr. Lewis is in his mid 30's. His predecessor, James Thompson, is in his early 30's." On May 23, 1994, Ms. Evans filed a verified complaint against TAS in the Circuit Court for Montgomery County, Maryland. TAS, subsequently removed the action to this Court and summarily moved to dismiss or, in the alternative, for summary judgment.

Ms. Evans responded with a brief in opposition supported by her affidavit. TAS timely moved to strike substantial portions of the affidavit alleging that many of Ms. Evans' statements are not based on personal knowledge or are hearsay under the Federal Rules of Evidence.

### DISCUSSION

Because Ms. Evans relied on her affidavit to show that genuine issues of material fact exist in this case, the Court must initially address the merits of TAS's motion to strike before addressing TAS's motion for summary judgment.

*The Affidavit*

The relevant portion of Rule 56(e) provides:

> (e) **Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Fed.R.Civ.P. 56(e).

The Court will apply this standard as well as other legal principles relevant to discrimina-

tion cases to determine if it should strike any portion of Ms. Evans' affidavit.

■ TAS first contends that paragraphs six, eight, ten, twelve, fifteen, sixteen and eighteen of Ms. Evans' affidavit are irrelevant allegations concerning her qualifications as well as those of other employees. It cites *Douglas v. PHH FleetAmerica Corporation,* 832 F.Supp. 1002 (D.Md.1993), for the proposition that a plaintiff's assertions about her qualifications is not relevant to the issue of age or sex discrimination. *Id.* at 1009. Rather, only the employer's perceptions about its employee's qualifications are relevant. *Id.*

■ Ms. Evans does not dispute that an employee's perceptions of her qualifications are irrelevant. She contends that TAS erroneously characterizes her statements and that her statements are valid and proper under Rule 56(e). She argues that her statements are based on personal knowledge and, indeed, they may very well be. However, the Court will not operate as TAS's super-personnel department determining, without regard to TAS's ability to assess the full dimension of its employees' qualifications and its ability to view its employees in a work environment, whether its perception of an employees' qualifications is erroneous. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980). Moreover, the Court will not review TAS's decision to grant or deny an employee a promotion based on its judgment as to relative qualifications. *See Wileman v. Frank,* 979 F.2d 30, 37–38 (4th Cir.1992). TAS is the employer, not the Court.

Accordingly, the Court will disregard those portions of paragraph eight wherein Ms. Evans discusses her qualifications; it will also strike those portions discussing Mr. Thompson's and Mr. Lewis' qualifications. The Court will strike all of paragraph ten and the last three sentences of paragraph twelve wherein Ms. Evans describes Mr. Thompson's qualifications and work experience. The Court will strike all of paragraph fifteen and sixteen wherein Ms. Evans discusses Mr. Lewis' qualifications. Finally, the Court will strike all of paragraph eighteen wherein Ms. Evans discusses Mr. Samuels' qualifications.

■ TAS argues that Ms. Evans' reliance on prior evaluations is irrelevant to the questions before the Court. It therefore moves the Court to strike paragraphs five and nine. While a court faced with an employment discrimination case should not base judicial decisions on prior good evaluations alone, an evaluation may be relevant to determine the ultimate question of discrimination. Thus, the Court will not strike paragraphs five and nine as being irrelevant.

TAS argues that the Court should strike paragraphs four, six, eleven and seventeen because Ms. Evans' allegations are not based on personal knowledge. In paragraph four, Ms. Evans states "[c]ontary to the assertions is [sic] Houseman's affidavit . . . to the best of my knowledge TAS has never implemented a reduction in force." As TAS correctly argues, under Rule 56(e) affidavits must be based on personal knowledge.

■ The Court opines that these statements are not based on personal knowledge. Ms. Evans' statements in paragraph four regarding TAS's alleged financial difficulties are not generally known to lower-level employees and it is clear from Ms. Evans' statement "to the best of my knowledge" that she does not have personal knowledge of TAS's financial affairs. Indeed, she attempts to clarify her knowledge about TAS's financial affairs by stating that "[she] can attest to the fact that the total number of TAS employees has remained constant since the beginning of my employment." These statements do not come within the realm of the personal knowledge needed under Rule 56(e). Accordingly, the Court will strike paragraph four.

■ In paragraph six, Ms. Evans' states that "[t]he QCS position did not require the candidate to possess computer software skills. Even if it did . . ." Clearly, Ms. Evans does not have personal knowledge of TAS's requirements for the QCS position. Her lack of knowledge is indicated by the language she used and by her statements that TAS never posted the position. Accordingly, the Court will strike the first sentence and the first four words of the second sentence.

■ The Court will not strike Ms. Evans' statements in paragraph seventeen. Here, Ms. Evans discusses TAS's policy for posting job vacancies. Unlike statements made about TAS's financial affairs, employees are often apprised of their employer's policies regarding posting job vacancies. Employees may gain such personal knowledge either through employee handbooks, interoffice memoranda or office meetings.

In paragraph five, Ms. Evans discusses what another co-worker said about her working relationship with other TAS employees. TAS contends that the Court should strike portions of paragraph five because it contains hearsay statements. Ms. Evans argues that she is not offering her statement for the truth but, rather, to show that a document exists which contradicts Mr. Houseman's affidavit statements about her working relationship with other employees. Accordingly, the Court will disregard the last sentence of paragraph five. If necessary, the Court will consider the document itself.

■ TAS also argues that the Court should strike portions of paragraph seventeen, wherein Ms. Evans refers to numerous statements based on writing in her diary. Ms. Evans argues that these statements fall under the recorded recollection exception to the hearsay rule. The Court agrees. *See* Fed.R.Evid.R. 803(5).

■ Finally, TAS reasons that the Court should strike portions of paragraphs two, five, seven, eleven, fourteen, seventeen and nineteen because statements contained therein are either irrelevant, conclusory, or both. The Court will strike the last sentence of paragraph two as conclusory. The first three sentences of paragraph five, with regard to why another employee retired from TAS and where he is now working are irrelevant and the Court will disregard them. Moreover, while the Court does not consider paragraphs eleven and fourteen wherein Ms. Evans discusses the Field Service Engineer and QCS positions irrelevant, it will consider the HRC letter and TAS correspondence rather than Ms. Evans' statements about what these documents contain. Accordingly, the Court will disregard paragraphs eleven and fourteen. Likewise, since Ms. Evans

never made her allegations that TAS denied her additional overtime because of her sex and age the subject of a timely filed charge, the Court will disregard all of paragraph nineteen.

Having placed the Ms. Evans' affidavit in proper perspective, the Court will now discuss TAS's motion for summary judgment.

### SUMMARY JUDGMENT PRINCIPLES

Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The plaintiff, Ms. Evans, bears the responsibility of coming forward with some minimal facts indicating the defendant's liability under the claims alleged. Fed.R.Civ.P. 56; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511. Thus, "[w]hile a day in court may be a constitutional necessity when there are disputed questions of fact," absent such a showing, the Court will not require TAS to undergo the considerable expense of preparing for and participating in a trial. *Bland v. Norfolk and Southern Railroad Company,* 406 F.2d 863, 866 (4th Cir. 1969).

■ In discrimination cases motive is often the crucial issue and, thus, the Court must take special care when considering a motion for summary judgment. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.) *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). Moreover, the Court must view all facts and reasonable inferences drawn therefrom in a light most favorable to Ms. Evans, the nonmoving party. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Yet, if Ms. Evans cannot prevail as a matter of law, the Court has an affirmative obligation to dispose of this matter and prevent it from proceeding to trial. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Applying this standard to the facts of the record here, the Court concludes

that TAS is entitled to summary judgment on all counts.

■ TAS first argues it should be granted summary judgment against Ms. Evans' claims of sex discrimination, other than her claim regarding the 1993 promotion decision. The basis for its argument is that Ms. Evans' sexual harassment allegations and discrimination allegations with regard to pay and benefits were never the subject of a timely filed charge. While Ms. Evans' original charge referred to sex discrimination, and was later amended to include age discrimination charges, nowhere in her charge does she make any reference to sexual harassment or pay and benefits discrimination of which she now complains in count one.

■ The Fourth Circuit has long held that a plaintiff's EEOC charge defines the scope of the plaintiff's subsequent right to institute a civil suit. *King v. Seaboard Coast Line Railroad Co.,* 538 F.2d 581, 583 (4th Cir.1976). The charge, whether filed with the EEOC or a state agency, will be "enlarged only by such [agency] investigation as reasonably proceeds therefrom." *Id.* Thus, a plaintiff "may not litigate allegations of discrimination which are neither stated in the original charge nor investigated by the [agency], nor file an across-the-board attack premised on a reasonable, but limited, investigation of a well-defined discrimination charge." *Pritchett v. General Motors Corporation,* 650 F.Supp. 758, 761–62 (D.Md.1986) (citing *Hubbard v. Rubbermaid, Inc.,* 436 F.Supp. 1184 (D.Md.1977)). However, an omitted charge may be pursued if it reasonably relates to the allegations and claims in the administrative charge. *King,* 538 F.2d at 583.

TAS argues that neither Ms. Evans' sexual harassment allegations nor her discrimination allegations with respect to pay and benefits reasonably proceed from or relate to Ms. Evans' original or amended charge. The Court agrees.

■ Neither a sexual harassment claim or claims of discrimination in pay and benefits reasonably proceeds from a sex discrimination claim based on failure to promote. *See Torriero v. Olin Corp.,* 684 F.Supp. 1165,

1170 (S.D.N.Y.1988) (sexual harassment claim not cognizable where EEOC charge alleged sex discrimination from promotion denial); *Miller v. Walker Div. of Butler Mfg. Co.,* 577 F.Supp. 948, 951 (S.D.W.Va.1984) (sex discrimination claims regarding promotion rejected where EEOC charge alleged sex discrimination in discharge). Here, Ms. Evans presented no evidence to indicate that her charges of sexual harassment or pay and benefits discrimination were investigated by the HRC or reasonably proceeded from their sex discrimination investigation.

Indeed, Ms. Evans concedes that these allegations do not reasonably proceed from her HRC charge. She reasons that these allegations are in the complaint to provide "further evidence of discrimination" and "to establish a pattern and/or practice of illegal discrimination, to evidence motive or intent or to establish pretext or subterfuge." (Paper No. 15, pp. 9–10). Nevertheless, the Court will grant TAS's motion for summary judgment against Ms. Evans' sexual harassment claims along with her claims of pay and benefits discrimination. To hold otherwise would potentially permit the "unrestrained expansion of the scope of Title VII." *See Hubbard,* 436 F.Supp. at 1190. Should the need arise, Ms. Evans may properly present evidence of TAS's alleged discrimination at trial.

■ TAS next argues that Ms. Evans' age discrimination claim should be dismissed as untimely. Under the relevant section of the Montgomery County Code, a claim for age discrimination must be filed with the HRC within 100 days of the last alleged discriminatory act. (Chap. 27, Art. 1). These filing restrictions are not arbitrary. Rather, they serve two important functions. First, they provide the agency with an opportunity to investigate and conciliate the discrimination claim. Second, they provide the defendant with notice of a potential suit. *See Conroy v. Boston Edison Co.,* 758 F.Supp. 54, 57 (D.Mass.1991) (citing *Powers v. Grinnell Corp.,* 915 F.2d 34, 37–38) (1st Cir.1990).

Here, Ms. Evans amended her charge well over 300 days after she filed her original charge with the HRC. The amended charge

added the entirely distinct claim of age discrimination. Moreover, TAS claims that it never received notice of the charge. Ms. Evans asserts that the HRC "accepted and processed" her amended charge and did not reject her age discrimination claim as time barred. The Court is not certain as to Ms. Evans' meaning of "processed." Suffice to say, that Ms. Evans has not disputed TAS's assertion that it never received notice. Moreover, Ms. Evans has also not produced any evidence indicating that HRC investigated her age discrimination charge. Since she filed suit in this Court a little over one month after she amended her charge, the Court opines that the HRC never sent TAS notice of, or investigated, Ms. Evans' age discrimination charge.

Ms. Evans argues that her amendment should relate back to the original charge. She relies heavily on *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970) for the proposition that a Title VII suit "may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Sanchez*, 431 F.2d at 466 (citation omitted). Yet, even relying upon *Sanchez*, Ms. Evans can not possibly believe that age discrimination is like or related to sex discrimination.

In her original charge, despite the representation of counsel, Ms. Evans never mentioned her age or indicated in any manner that age was a factor. Relying on the principle established in *Sanchez*, this Court holds that Ms. Evans' age discrimination charge is time barred. Therefore, the Court will dismiss this count.

TAS next argues that Ms. Evans' sex discrimination claim, should be dismissed for failure to state a claim and because the evidence reveals that she was not the victim of sex discrimination. In support of its argument, TAS provided the Court with various office memoranda. Ms. Evans, likewise, provided the Court with relevant documentation. Accordingly, the Court will treat TAS's motion to dismiss as one for summary judgment.

 In order to prevail on her sex discrimination claim, Ms. Evans must show that, but for Defendant's discriminatory motive, she would have been allowed to apply for, and ultimately given the promotion. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir.1992). Ms. Evans may prove Defendant's discriminatory motive using direct or indirect evidence under ordinary principles proof, or she may rely upon the *McDonnell Douglas* proof scheme. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Under the ordinary principles of proof, Ms. Evans fails to meet the standard for showing sex discrimination. She has presented neither direct nor indirect evidence of TAS's alleged discrimination. Indeed, many of the facts upon which she relies are either immaterial, irrelevant, or conclusory. Thus, Ms. Evans must rely upon the *McDonnell Douglas* proof scheme.

 Under *McDonnell Douglas*, Ms. Evans must establish, by a preponderance of the evidence, a prima facie case of sex discrimination. She must show that (1) she is a member of the protected group, (2) TAS did not promote her to a given position, (3) TAS placed another person outside the protected group in the position, and (4) she was qualified for the position. *See Wileman v. Frank*, 979 F.2d 30, 33 n. 5 (4th Cir.1992). Once Ms. Evans makes out a prima facie case, a presumption exists that TAS unlawfully discriminated against her. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). TAS may rebut this presumption by advancing a legitimate nondiscriminatory reason for failing to promote her. Should TAS succeed, the presumption drops from the case. *Id.* at 255, 101 S.Ct. at 1094. Ms. Evans must then demonstrate that TAS's reasons are merely pretextual or are unworthy of credence and the real motive for failing to promote her is her gender. *See St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Throughout this process, Ms. Evans retains the ultimate burden of persuasion. *Id.* at ——, 113 S.Ct. at 2747.

 Applying the *McDonnell Douglas* proof scheme to the facts at hand, the Court

concludes that Ms. Evans has failed to establish a prima facie case of sex discrimination. Ms. Evans has no problem satisfying the first three prongs of the *McDonnell Douglas* test. She is female, thus she is a member of the protected group; TAS neither promoted nor gave her a chance to apply for the QCS position; and, the person who TAS appointed to the position was not a member of the protected group. Yet, in order for Ms. Evans to make out a prima facie case she must show that she was qualified.

■ Here, only TAS's perceptions about Ms. Evans' qualifications are relevant. *See Douglas,* 832 F.Supp. at 1009. TAS contends that Ms. Evans was not qualified for the QCS position because she lacked the computer software skills TAS desired in order to eliminate the QCS position and merge its duties into a software engineering position. Moreover, TAS indicates that even had it decided to continue the QCS position as a separate position, Ms. Evans would not have been qualified. Specifically, TAS asserts that Ms. Evans' problems with moodiness and squabblings with other employees decreased her chances of promotion.

Ms. Evans presented no evidence to show that TAS's reasons for not promoting her are mere pretext. Indeed, in some instances she appears to concede that she was not as qualified as Mr. Lewis. While she strenuously argues that she was qualified for the QCS position, her own self-perceptions of her qualifications are irrelevant. *Id.*

Moreover, Mr. Houseman's alleged statement that he would never promote her, without more, does not provide the Court with sufficient basis for finding that TAS discriminated. Ms. Evans provides the Court with no contextual background for the alleged statement. In light of the record before it, the Court is hard-pressed to find this alleged statement material.

### CONCLUSION

Ms. Evans has failed to establish a prima facie case of TAS's alleged discrimination nor has she produced any evidence which creates a genuine issue of material fact. Rather than providing the Court with evidence of pretext or showing that TAS's explanations are unworthy of credence, Ms. Evans merely asserts that she was qualified for the QCS position. In the absence of other evidence, the Court has an affirmative obligation to prevent this matter from proceeding to trial. Accordingly, the Court must grant TAS's motion for summary judgment.

### *ORDER*

For the reasons set forth in the attached Memorandum Opinion, IT IS this 9th day of February, 1995, by the United States District Court for the District of Maryland, Southern Division, hereby **ORDERED:**

1. That Defendant's Motion to Dismiss count II (age discrimination) of Plaintiff's Complaint BE, and the same hereby IS, **GRANTED;**

2. That Defendant's Motion for Summary Judgment against Plaintiff's sex discrimination claims (counts I and III) BE, and the same hereby IS, **GRANTED;**

3. That Defendant's Motion to Strike Plaintiff's affidavit BE, and the same hereby IS, **GRANTED** in part and **DENIED** in part, consistent with the attached Memorandum Opinion;

4. That the Clerk of the Court **CLOSE** this case;

5. That the Clerk of the Court mail copies of this Order to all parties of record.