**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAWN F. MUNDAY,
Plaintiff-Appellee,

v.

WASTE MANAGEMENT OF NORTH

AMERICA, INCORPORATED; WASTE
MANAGEMENT OF MARYLAND,
INCORPORATED,
Defendants-Appellants.

No. 94-2192

DAWN F. MUNDAY,
Plaintiff-Appellant,

v.

WASTE MANAGEMENT OF NORTH

AMERICA, INCORPORATED; WASTE
MANAGEMENT OF MARYLAND,
INCORPORATED,
Defendants-Appellees.

No. 94-2193

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frank A. Kaufman, Senior District Judge.
(CA-92-467-K)

Argued: May 3, 1995

Decided: September 11, 1997

Before WIDENER and WILLIAMS, Circuit Judges, and HEANEY,
Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

No. 94-2192 affirmed in part, reversed in part, and remanded, and No. 94-2193 dismissed as moot by published opinion. Judge Widener wrote the opinion, in which Judge Williams concurred. Senior Judge Heaney wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Russell Heuer Gardner, PIPER & MARBURY, Baltimore, Maryland, for Appellants. Harold R. Weisbaum, BLUM & WEISBAUM, P.A., Baltimore, Maryland, for Appellee. **ON BRIEF:** Ann L. Lamdin, PIPER & MARBURY, Baltimore, Maryland, for Appellants. Charles J. Goetz, III, BLUM & WEISBAUM, P.A., Baltimore, Maryland, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Defendants Waste Management of North America, Inc. and Waste Management of Maryland, Inc. (collectively, Waste Management) appeal from an adverse judgment of the district court, sitting without a jury, on claims of retaliation under Title VII, 42 U.S.C. § 2000e-3(a), and breach of contract brought by plaintiff Dawn Munday. Miss Munday cross-appeals from the district court's conclusions that she could not recover compensatory or punitive damages for defendants' conduct occurring prior to the effective date of the Civil Rights Act of 1991 and that the Title VII remedies awarded in this case preclude additional recovery for breach of contract under Maryland law. For the following reasons, we affirm in part, reverse in part, and remand.

The facts of this case are set forth in the opinion of the district court, Munday v. Waste Management of North America, Inc., 858 F. Supp. 1364 (D. Md. 1994), and because the parties chose not to transcribe the proceedings below, those facts are undisputed.**1** Briefly,

_____

**1** Because both parties have chosen not to provide a transcription of the record below or to identify factual errors made by the district court, we

those facts are as follows. Miss Munday began working for Waste Management of Maryland in December 1986. Munday , 858 F. Supp. at 1367. After a transfer to Waste Management of Greater Washington, Miss Munday resigned and was rehired as a truck driver by Waste Management of Maryland in August 1988. Munday, 858 F. Supp. at 1367. She was subjected to a number of instances of sexual harassment. Munday, 858 F. Supp. at 1367-68. On May 30, 1989, after Miss Munday walked off the job because of her dissatisfaction with the truck with which she was provided for the day, she was properly fired for insubordination. Munday, 858 F. Supp. at 1368.

Miss Munday then filed a claim of sexual harassment and sex discrimination with the Howard County, Maryland Office of Human Rights, which issued a reasonable-cause letter. Munday, 858 F. Supp. at 1369. A hearing was commenced, but on April 19, 1991, the parties settled the dispute. Munday, 858 F. Supp. at 1369, 1375. In the settlement agreement, Waste Management agreed, among other things, to expunge Miss Munday's termination, to reinstate Miss Munday, and not to retaliate against her for filing the complaint in the Office of Human Rights. Munday, 858 F. Supp. at 1369.

Prior to Miss Munday's agreed return to work, Waste Management of Maryland held a safety meeting at which the employees were told not to sexually harass Miss Munday. Munday, 858 F. Supp. at 1369. Robert Bohager, General Manager of the Maryland facility, Munday, 858 F. Supp. at 1367, also told the employees not to socialize with Munday and to avoid her as much as possible. Munday, 858 F. Supp. at 1369.

When Miss Munday returned to work, on July 8, 1991, Munday, 858 F. Supp. at 1369, Waste Management had failed to take several measures necessary to prepare for her return, although these measures were taken thereafter. Munday, 858 F. Supp. at 1369. Other employ-

_____

will take all, and only, the facts as stated by the district court as true and undisputed. See Hicks v. United States, 368 F.2d 626, 630-31 (4th Cir. 1966) ("The determination . . . involves not only the formulation of the legal standard, but . . . its application to the evidentiary facts as established; and since these are uncontested, there is no basis for applying the `clearly erroneous' rule" of F.R. Civ. P. 52(a)).

3

ees refused to talk with her, and she was told that Bohager and another manager, Heider, had instructed the employees to ignore her and to report back to Bohager anything she said to other employees. Munday, 858 F. Supp. at 1370.

On July 26, 1991, Heider informed Miss Munday that Bohager had told the employees not to talk to Miss Munday and that Bohager wanted to get rid of Munday. Munday, 858 F. Supp. at 1370. Later that day, at a scheduled meeting attended by Munday, Bohager, and Chad Johnson, Waste Management of Maryland's Operations Manager, to address Miss Munday's complaints, Bohager yelled at Munday because he had heard a rumor that she planned to sue the company again. Munday, 858 F. Supp. at 1370. Munday denied this and attempted to address her concerns, but Bohager stated, colorfully, that he did not care about her problems. Munday , 858 F. Supp. at 1370.

From August 1991 to September 1992, Miss Munday worked intermittently for Waste Management due to several periods of disability leave. See Munday, 858 F. Supp. at 1370-71. During this time, while she was working, Miss Munday continued to be ignored by her coworkers, was assigned a route other than one she requested, and was subjected to a number of work-related unpleasantries of which she complained and which were adequately investigated and addressed by Waste Management. See Munday, 858 F. Supp. at 1370-71.

On September 29, 1992, Miss Munday was placed on disability leave following "so-called panic attacks while driving her route." Munday, 858 F. Supp. at 1371. She began a new job in October 1992 although she did not resign from Waste Management until December 7, 1992. Munday, 858 F. Supp. at 1371.

The district court, sitting without a jury, found that Miss Munday had not made out a prima facie case of sexual harassment or sex discrimination. Munday, 858 F. Supp. at 1374. [2] The district court found for Miss Munday, however, on her claim that Waste Management,

_____

[2] Plaintiff does not appeal these conclusions.

4

through Bohager, retaliated against her for filing her claim with the Office of Human Rights, in violation of Title VII, and breached a provision of the settlement agreement which provided that Waste Management, "`agrees that there shall be no discrimination or retaliation of any kind against any person because of lawful opposition to any practice declared unlawful under . . . Title VII, or because of the filing of a charge, giving of testimony or assistance, or participation in any manner in any investigation, proceeding or hearing under . . . Title VII.'" Munday, 858 F. Supp. at 1376 (quoting the settlement agreement) (alterations in original).

The district court granted Miss Munday backpay, Munday, 858 F. Supp. at 1378, as well as compensatory and punitive damages for the conduct of Waste Management occurring after November 21, 1991, the effective date of the Civil Rights Act of 1991, which provides for such remedies. Munday, 858 F. Supp. at 1378-79; see 42 U.S.C. § 1981a(b)(1), (3). The district court found that Maryland law would permit an award of compensatory and punitive damages for the tortious breach of a contract, Munday, 858 F. Supp. at 1379-80, but held that federal law governs the enforcement of a Title VII settlement agreement and that Miss Munday could not recover through a state law breach-of-contract claim compensatory and punitive damages for pre-November 21, 1991 conduct where those damages "are unavailable under the very federal law which itself provides the right which plaintiff is enforcing." Munday, 858 F. Supp. at 1381. Accordingly, the district court held that "plaintiff is limited to Title VII remedies." Munday, 858 F. Supp. at 1381.

Defendants, while disputing none of the factual findings of the district court, challenge each adverse conclusion of the district court as erroneous as a matter of law. We will address each such challenge.

I.

In order to establish a prima facie claim of retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a),[3] a plaintiff must show that

_____

[3] "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

5

"1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985).**4** The employer may then rebut the prima facie case, see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), by showing that there was a legitimate non-discriminatory reason for the adverse action, Ross, 759 F.2d at 365, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994).

A.

The district court found that Miss Munday had established a prima facie case of retaliation and that defendants had not presented any legitimate nondiscriminatory alternative. See Munday, 858 F. Supp. at 1374-75. The district court found that Bohager's conduct in "yelling at [Miss Munday] during the July 26, 1991, meeting, directing other employees to ignore her and to spy on her, and generally refusing to communicate with her concerning her employment-related complaints, even though some of them were not meritorious," constituted "a pattern of retaliation. . . . In effect, Bohager had knowledge of a number of Munday's employment related and non-employment related problems and failed to act appropriately in a number of instances in the expectation that those problems would eventually wear down Munday and force her to quit." Munday, 858 F. Supp. at 1374.

We agree with the defendants that, as a matter of law, this scenario does not rise to the level of an adverse employment action for Title VII purposes. In no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instructed employees to ignore and spy on an employee who engaged in protected activity, without evidence that the terms, conditions, or benefits of her employment were adversely affected. See Hopkins v. Baltimore Gas and Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996) (Hopkins was not discharged from employment, and the comments in

_____

**4** There is no dispute that Miss Munday's complaint before the Office of Human Rights constituted a protected activity.

6

question were not and did not result in any adverse employment action); DiMeglio v. Haines, 45 F.3d 790, 804 & n.6 (4th Cir. 1995) (a reprimand and reassignment may constitute an adverse employment action); Bristow v. Daily Press, Inc., 770 F.2d 1251, 1254 (4th Cir. 1985) (the Age Discrimination in Employment Act"affords no protection unless there has been some adverse employment action by the employer. Because Bristow was not actually discharged, he relies here on a theory of constructive discharge."), cert. denied, 475 U.S. 1082 (1986); Evans v. Davies Truckers, Inc., 769 F.2d 1012, 1014 (4th Cir. 1985) (Title VII retaliation claim requires adverse employment action, which does not obtain where plaintiff voluntarily resigns). We note that, although the district court found that Bohager knew of and did not address Miss Munday's employment-related complaints, the district court also found that Miss Munday's employment-related complaints were addressed, investigated and, where appropriate, corrected, by other employees of Waste Management. See Munday, 858 F. Supp. at 1369, 1370, 1371, 1372.

We thus hold that, because there was no adverse employment action, the district court erred in concluding that Miss Munday suffered unlawful retaliation under § 2000e-3(a) of Title VII by virtue of Bohager's conduct in, for example, yelling at Miss Munday and telling others to ignore and to spy on her.

B.

The district court, after concluding that Bohager had unlawfully retaliated against Miss Munday for the reasons we have rejected above, continued by concluding that Waste Management had constructively discharged Miss Munday. See Munday , 858 F. Supp. at 1375-76. Constructive discharge may be an adverse employment action in violation of § 20003e-3(a) "when the record discloses that it was in retaliation for the employee's exercise of rights protected by the Act." Holsey v. Armour & Co., 743 F.2d 199, 209 (4th Cir. 1984), cert. denied, 470 U.S. 1028 (1985). The district court did not explicitly find any causal link between the protected activity of Miss Munday and the constructive discharge, as required by Ross; however, we are of opinion that because the district court relied upon substantially the identical factual bases in determining that Miss Munday had been constructively discharged as it had relied upon in determining that

7

Miss Munday had been unlawfully retaliated against, the gist of the district court's conclusion regarding the Title VII retaliation claim is that Miss Munday was subjected to retaliatory constructive discharge because of her pursuit of a complaint before the Office of Human Rights, in violation of § 2000e-3(a) of Title VII. We now take up the defendants' challenge to the district court's finding that Miss Munday was constructively discharged.

Constructive discharge occurs "when `an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" Holsey, 743 F.2d at 209 (quoting J.P. Stevens & Co. v. NLRB, 461 F.2d 490, 494 (4th Cir. 1972)). Thus, "[a] plaintiff alleging constructive discharge must . . . prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Bristow, 770 F.2d at 1255. The district court found that Bohager deliberately attempted to force Miss Munday to quit her job, Munday, 858 F. Supp. at 1375. Defendants argue, however, that the facts as stated by the district court do not, as a matter of law, support its conclusion that Miss Munday's working conditions were intolerable.

"Intolerability of working conditions . . . is assessed by the objective standard of whether a `reasonable person' in the employee's position would have felt compelled to resign. . . . An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress." Bristow , 770 F.2d at 1255. We agree with the defendants that the facts as found by the district court do not rise to the level of objective intolerability sufficient to create an adverse employment action under § 2000e-3(a).

The district court found that "[t]hroughout her tenure at Waste Management, [Miss Munday] had to cope with being ignored both by her co-workers and by the top supervisor at the . . . facility." Munday, 858 F. Supp. at 1376. As stated above, this conduct is insufficient to establish an adverse employment action in itself. Miss Munday's complaints were investigated, and were corrected where meritorious. See Munday, 858 F. Supp. at 1369, 1370, 1371, 1372. She never complained about being ignored, and there is no evidence that any co-

8

worker actually spied on her or reported her statements to Bohager or other management. Moreover, Miss Munday's employment status was not altered, and there is no evidence that she ever received a reprimand in her record or an unsatisfactory evaluation. Finally, Miss Munday did not actually resign her employment with Waste Management until December 1992, some seventeen months after the events leading to and including July 26, 1991, upon which most of her claim was based, thus objectively belying her assertion that she was forced to resign from her employment with Waste Management.

In short, there is simply no evidence that Miss Munday was forced to resign from Waste Management by any conduct of Bohager or others. See Holsey, 743 F.2d at 209. We thus hold that she was not constructively discharged, notwithstanding either Bohager's intent to persuade her to resign or the fact that he successfully made her working environment unpleasant. Indeed, the district court found as a fact that Miss Munday "wrongly viewed such antagonism and retaliatory conduct as based on sex discrimination and sexual harassment."

Because we hold that Waste Management took no adverse employment action against Miss Munday in retaliation for her engagement in protected activity, we reverse the judgment of the district court on Miss Munday's claim of unlawful retaliation in violation of § 2000e-3(a) of Title VII.

II.

The district court found that Waste Management breached the April 1991 settlement agreement by retaliating against Miss Munday for engaging in protected activity, in violation of paragraph 4 of the settlement agreement.[5] The district court relied on the reasons stated in its analysis of the Title VII retaliation claim to support this conclu-

_____

[5] The district court held that a second alleged breach of the settlement agreement, the failure to expunge Miss Munday's termination of May 30, 1989 prior to her return to work, would result in nominal damages at most, and that a third, the failure to provide Miss Munday with adequate restroom facilities, did not occur because the bathroom facilities were made adequate within a reasonable time after her return to work. See Munday, 858 F. Supp. at 1376.

9

sion. Defendants argue that this conclusion, as well, was erroneous as a matter of law.

Paragraph 4 of the settlement agreement provides that "there shall be no discrimination or retaliation of any kind" against any person for engaging in protected activity. The language "of any kind" clearly requires a lower threshold of proof than the adverse employment action required to show a violation of § 2000e-3(a), see Ross, 759 F.2d at 365; thus, we think the district court was correct in concluding that Bohager and Waste Management violated the settlement agreement by intentionally making Miss Munday's working conditions unpleasant because of her claim before the Office of Human Rights.**6**

Because we have reversed the district court's judgment on Miss Munday's Title VII claim, and because the district court held that "the damages which plaintiff suffered as a result of defendant's Title VII violation and breach of contract are identical. Therefore, plaintiff is limited to Title VII remedies," Munday, 858 F. Supp. at 1381, we must remand this case to the district court for a determination of the extent of Miss Munday's damages resulting from defendants' breach of the settlement agreement. For the same reason, we are of opinion that Miss Munday's cross-appeals are moot, and we will not address those issues.

III.

For the foregoing reasons, the judgment of the district court is

_____

**6** Defendants present us with no argument to support their contention that paragraph 4 is not an enforceable contract provision, and we find none. As we have stated, the promise made by defendants in their settlement agreement is not identical to the prohibition in § 2000e-3(a) against taking adverse employment action in retaliation for protected conduct; thus, the contract provision, although related to Title VII as found by the district court, see Munday, 858 F. Supp. at 1380-81, is not identical to § 2000e-3(a), and the district court properly found paragraph 4 to be enforceable independently.

We also reject as without merit defendants' assertion that the district court found Miss Munday's contract claim preempted by Title VII.

10

affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

No. 94-2192 -<u>AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS</u>

No. 94-2193 -<u>DISMISSED AS MOOT</u>

HEANEY, Senior Circuit Judge, concurring and dissenting:

I agree with the district court that Munday was constructively discharged from her employment at Waste Management. For over a year, Waste Management alienated Munday from her co-workers, creating intolerable working conditions that forced Munday to quit her job. I also agree that Munday has demonstrated retaliation in violation of 42 U.S.C. § 2000e-3(a) because the intolerable working conditions were orchestrated by Waste Management in response to Munday's filing of a discrimination claim against the company. Therefore, I respectfully dissent from the majority's opinion.*

With respect to the constructive discharge claim, the district court found that after Munday returned to work following the settlement agreement, Bohager set a plan into motion with the specific purpose of "gradually causing Munday herself to reach the conclusion that she could not continue her employment [with Waste Management]." <u>Munday</u>, 858 F. Supp. at 1372. Bohager instructed his drivers to have as little contact with Munday as possible both on and off the job and to "spy on her, to report her activity and comments to him, to watch, in effect, for every slip that she made." <u>Id.</u> Bohager targeted only Munday; he did not forbid his drivers from speaking or associating with anyone else. Although an employee is not guaranteed a working environment free of stress, Bohager's plan created exactly the type of environment this court has recognized as impermissible: "a calculated effort to pressure [Munday] into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by her co-

_____

*Consistent with my views on Munday's Title VII claim, I concur in the majority's determination that Waste Management breached the April 1991 settlement agreement by retaliating against Munday for engaging in protected activity.

11

workers." See Bristow, 770 F.2d at 1255. I cannot imagine anything worse for an employee than to work in an environment in which co-workers refuse to speak or associate with her any more than is absolutely essential to carry out their respective jobs. In my view, Munday has demonstrated that Waste Management acted deliberately in creating a working environment in which she could no longer perform and that a reasonable person in Munday's position would have felt compelled to quit as a result of Waste Management's conduct.

The majority concedes that Bohager intended to persuade Munday to resign and that he successfully made her working environment unpleasant, but nonetheless rejects Munday's constructive discharge claim. In reaching its conclusion, the majority contends that the fact that Munday did not resign until December 1992, seventeen months after the events leading to and including the July 26th meeting, belies her assertion that she was forced to resign. This contention ignores the district court's specific finding that although a considerable amount of time passed between the meeting and Munday's resignation, Bohager continued to urge other employees not to have contact with her and to spy on her. Munday, 858 F. Supp. at 1375-76. The district court determined that during the entire time Munday worked for Waste Management after the settlement agreement, she had to cope with being ignored by her co-workers and her supervisor. Id. In light of its factual findings on the extent of Bohager's conduct, I agree with the district court that Munday was constructively discharged.

Similarly, the district court correctly determined that Waste Management retaliated against Munday because she filed a discrimination claim against the company. No one disputes that Munday engaged in protected activity by filing the claim. In discussing the breach of contract claim, the majority also concedes that Bohager's conduct was causally related to Munday's filing of the discrimination claim with the Office of Human Rights. My point of departure with the majority on Munday's retaliation claim therefore is exactly the same as I set forth in the above discussion. The majority rejects Munday's retaliation claim solely because it determined that Bohager's conduct did not rise to the level of an adverse employment action for Title VII purposes. In contrast, I believe that Munday has established that Waste Management took an adverse employment action against her

12

because Bohager's conduct set into motion a working environment so intolerable as to constitute a constructive discharge.

In light of my views on the liability issues, I must also address whether the district court erred in awarding of equitable relief and compensatory and punitive damages for conduct that occurred after November 21, 1991 and in denying front pay. I believe that the district court's award was appropriate in all respects, and I would affirm the damages as allocated.

13