**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1758**

---

SHARON S. COX,

Plaintiff - Appellant,

versus

DONALD H. RUMSFELD, Secretary Department of
Defense,

Defendant - Appellee.

---

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Leonie M. Brinkema, District
Judge.  (CA-04-476-1)

---

Submitted:  July 7, 2006                Decided:  July 20, 2006

---

Before TRAXLER and DUNCAN, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

Steven G. Raikin, Washington, D.C., for Appellant.   Paul J.
McNulty, United States Attorney, Rachel C. Ballow, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria,
Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Sharon Cox appeals from the district court's award of summary judgment to her former employer, the United States Department of Defense ("DOD"), on her claims of multiple violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e at seq. (2000). Cox challenges on appeal only the award of summary judgment on her retaliation claims. For the reasons that follow, we affirm.

I.

Because of the procedural posture of the case, we recite the facts in the light most favorable to Cox. She began work as a DOD Office of Inspector General ("OIG") auditor in October 1998, and was terminated a year later. Almost immediately after starting at the OIG, Cox began to complain of harassment by her supervisor, Neal Gause. In her complaint, she alleges that she was subjected to "a hostile work environment, sexual harassment, repeated threats, intimidation, unfair treatment because of her gender, and one instance of unwanted physical contact." J.A. 14.

In terms of her work, Cox experienced difficulty submitting required reports in a timely manner and in the proper format. After noticing these ongoing problems, Gause and his supervisor, John Snider, met with Cox to discuss their concerns. Shortly after this meeting, Snider and his supervisor, John Meling, contacted the

2

DOD personnel office to discuss problems that they had been having getting Cox to meet auditing standards and deadlines.

Cox attributed any deficiencies in her work to the fact that the DOD delayed in providing her with required training and to the stress caused by ongoing public humiliation by Gause. On February 22, 1999, Cox asked to be removed from Gause's supervision. Snider acquiesced to this request and placed her under his direct supervision until a lower level supervisor, John Dizik, became available in March 1999. Three days after making the request to have no further contact with Gause, Cox filed an Equal Employment Opportunity ("EEO") complaint alleging gender discrimination and a hostile work environment.

Once Cox was under Snider's supervision, he began to closely monitor her progress and ability to meet deadlines. This monitoring continued until she was transferred to Dizik's supervision. Dizik often attempted to meet with Cox to discuss her performance but was unable to do so prior to her midyear review as she consistently rescheduled the meetings.

On May 6, 1999, Cox had her midyear review. The review indicated that she needed improvement in every area of auditing necessary for her job, but, because she had not received the necessary training, provided for a three month period for reevaluation. Cox attended the requisite training session for three weeks starting May 8, 1999, but, upon completion, only came

back to the office for one day. On June 21 1999, she briefly returned to the office and filed a second EEO complaint alleging that her poor review was retaliation for her initial complaint. She immediately thereafter took a combination of sick and annual leave until she was terminated on October 15, 1999.

In August 2000, the EEO office issued a Final Agency Decision finding for the DOD on all of Cox's complaints. Cox timely appealed the decision to the Equal Employment Opportunity Commission ("EEOC"), where an Administrative Law Judge conducted hearings and then ruled for the defendant in August of 2003. Six months later, the EEOC denied her petition for a rehearing. Cox timely appealed the EEOC's decision to the district court, which granted summary judgment for the DOD on all of her claims. This appeal followed.

## II.

This court reviews a grant of summary judgment de novo, viewing all inferences in the light most favorable to the nonmoving party. Baqir v. Principi, 434 F.3d 733, 741 (4th Cir. 2006). Summary judgment should only be granted when there are no issues of material fact. See Celotex Corp v Catrett, 477 U.S. 317, 322 (1986). The sole issue on appeal is whether the district court erred in granting summary judgment on the retaliation claims.

4

To establish a claim of retaliation, a plaintiff must show (1) that she engaged in a protected activity, (2) that the employer took an adverse action against her and (3) that a causal connection existed between the protected activity and the adverse action. Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Once a prima facie case is established, the court must consider whether the defendant has proffered a legitimate, nondiscriminatory reason for the action; if so, the plaintiff must prove that the rationale is a pretext for retaliation. See McDonnell Douglass Corp v. Green 411 U.S. 792, 802-804 (1973); Mundy v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). We consider Cox's claims with respect to her poor midterm review and termination separately.

A.

The DOD does not contest that Cox established a prima facie case of retaliation upon receiving a poor midyear review shortly after filing her first EEO complaint. See King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003). Thus, the question becomes whether the DOD offered a valid explanation for the midyear review, and, if so, whether Cox carried her ultimate burden of proving that the explanation was pretextual.

The record before us reveals no questions of fact with respect to the accuracy and supportability of Cox's midyear review. As the

district court noted, Cox's own evidence supports that the DOD voiced concerns regarding her performance well before she filed her first EEO complaint.  That complaint references numerous critical comments about the substantive deficiencies and untimeliness of her work.  Those comments are consistent with both the documented assessment of the midyear review itself and the testimony of Cox's supervisors, both of which detail her failure to complete assignments in a satisfactory and timely manner.  Cox's own after-the-fact assertions about her performance are not enough to prove that the justification was pretextual.[*]  See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir.2000); Evans v. Technologies Services & Applications Co., 80 F. 3d 954, 960 (4th Cir. 1996).

B.

Next, Cox asserts that her termination from the DOD was retaliation for her second EEO filing.  She bases this claim on the fact that the proposal to dismiss her from her job was written in August 1999, shortly after she had filed an EEO complaint in June

---

[*]Cox also submitted an affidavit by Henry Schronagel, a retired government auditor with a lengthy career in public service, who had reviewed her work papers and found them to be acceptable, given her level of training.  Schronagel had no access to any audit records beyond what was given to him by Cox, and, as the district court noted, was therefore not in a position to determine whether they were substantively accurate and complete or timely.  Thus, Schronagel's testimony cannot prove that Cox's work met the defendant's expectation.

1999 and thus was prima facie retaliatory. See King, 328 F.3d at 151. As discussed above, however, once a prima facie case is established, Cox must prove that the DOD's rationale for her dismissal was pretextual.

The DOD responded to the prima facie case by first pointing to the dissatisfaction with her work reflected in the mid-year review, and then by noting that her absence from work meant that there was no new work product for it to reevaluate. It then fell to Cox to show that her absence, lack of work, and poor work product prior to the review were merely a pretext for retaliation.

Once again Cox offers her own assertions, supported in some respects by Schronagel, of abuse, retaliation, and her competence as an auditor, none of which go to prove that the excuse offered by the DOD was pretextual. See Evans, 80 F. 3d at 960. She also points to alleged disparities between her treatment and that of male employees whose midyear reviews showed that they needed improvement. However, she provided a review for only one other employee, and it was not, on its face, nearly as negative as Cox's. J.A. 79, 183. More significantly, however, that employee did not spend the next three months out of the office and thus not manifest improvement. Finally, Cox points to the fact that her therapist recommended that she not return to a harmful environment as justification for her sick leave. We are not assessing the legitimacy of her taking sick leave, however. We are determining

whether one of the DOD's stated reasons for her termination--that she produced no work to reevaluate--is pretextual. Cox's evidence only proves that the DOD was aware that she had filed complaints when it terminated her. Yet, "mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation." Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).

## III.

Other than her own allegations, Cox has failed to present evidence to refute the DOD's legitimate, nondiscriminatory reasons for her negative midyear review or her termination. Accordingly, the district court's award of summary judgment to the Department of Defense is

AFFIRMED.

8