John A. **LENHART,** Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,** Defendant.

No. 3:99CV174–V.

United States District Court, W.D. North Carolina, Charlotte Division.

March 26, 2001.

John W. Gresham, Ferguson, Stein, Wallas, Gresham & Sumter, P.A., Charlotte, NC, for Plaintiff.

G. Scott Humphrey, Moore & Van Allen, Charlotte, NC, for Defendants.

### MEMORANDUM AND RECOMMENDATION AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendant's "Motion for Summary Judgment" (document # 23), "Memorandum in Support" (document # 24), and "Appendix in Support" (document # 25), all filed January 16, 2001. "Plaintiff's Response ..." (document # 28) was filed February 20, 2001; and "Defendant's ... Reply" (document # 32) was filed March 14, 2001. On March 21, 2001, the Plaintiff filed a "Motion to File Further Response ..." (document # 34) and "Plaintiff's Further Response ..." (document # 35).

The instant motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and are now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant*

Plaintiff's Motion to File Further Response and will respectfully recommend that Defendant's Motion for Summary Judgment be *granted.*

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is an action for damages and equitable relief under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and the public policy of North Carolina.

Defendant General Electric Company ("GE") is a New York corporation doing business through 12 unincorporated operating divisions, including GE Lighting ("GEL"). GEL is headquartered in Cleveland, Ohio, and operates roughly 26 manufacturing plants and eight distribution centers in North America, together with a sales organization spread throughout North America in field sales offices.

Plaintiff John A. Lenhart, date of birth January 28, 1947,[1] was first employed with GEL in August 1969, and by December 1994, had advanced to the position of Commercial and Industrial ("C & I") Regional Sales Manager in Charlotte, North Carolina.[2] In that role, he headed up the regional sales office and supervised between ten to twenty sales representatives.

Mr. Lenhart reported directly to the C & I General Manager, Stan Davis.[3]

The Plaintiff alleges that sometime prior to November 1996, Mr. Davis made statements that older workers were "traditional rather than contemporary" and "lacked capacity for change."[4] However, Mr. Davis and Mr. Lenhart are separated in age *by only eight months*, had known each other for thirty years, and began their careers with GEL together as trainees. Prior to his discharge, Mr. Lenhart had never made any age-related complaint against GEL or any of his supervisors and desired to remain at GEL until retirement.

In December 1994, GEL created the Grainger National Account Manager position as part of a strategy to devote a team of field salespersons to one customer exclusively, in this case, Grainger. Ron Cantlie, located in Cleveland, was the Supervisor of the Grainger team.[5]

The initial Grainger National Account Managers were: Matt Castro in New Jersey, Christine Thomas in Atlanta, Byron Webster in Cleveland, Bob West in Dallas, Dan Wilkinson in Chicago, and Keith Young in San Francisco.[6]

In April 1995, Mr. Lenhart became the seventh Grainger National Account Manager and remained in Charlotte, North

---

1. Plaintiff was 49 years old at the time of his termination in November 1996.

2. At all relevant times, GEL's sales organization was divided between consumer sales and commercial and industrial ("C & I") sales. Each sales organization was divided into several different geographic regions, each with a principal sales office.

3. Stan Davis was 49 years old in November 1996.

4. The Plaintiff also makes the wholly unsupported allegation that GE CEO Jack Welch had "indicated in letters ... that GEL needed to beware 40 year olds building white picket fences." *See* "Plaintiff's Response ..." at 3 (document # 28). The record contains no

specifics as to when or to whom these letters were written and, in any event, Mr. Welch was not involved in selecting employees to be terminated in the 1996 GEL layoffs.

5. Ron Cantlie was 54 years old in November 1996.

6. Christine Thomas is 13 months younger than the Plaintiff and was 48 years old in November 1996. Keith Young and Bob West were 33 and 58 years old, respectively, in November 1996. The record does not reflect Mrs. Webster and Wilkinson's ages, although both are older than the Plaintiff. *See* "Plaintiff's Response ..." at 12 (document # 28).

Carolina. Mr. Lenhart no longer reported directly to Mr. Davis, but instead reported to Mr. Cantlie, who, in turn, reported to Mr. Davis. In May or June 1996, Matt Castro resigned and was not replaced, leaving six Grainger National Account Managers.

The Plaintiff admits that *all* of the Grainger National Account Managers were "very capable people" who did a "good job" and that the Grainger National Account Manager team was very successful. In their most recent performance evaluations prior to November 1996, the Plaintiff, Mr. Wilkinson, Mr. Webster, and Ms. Thomas all received the same rating—four on a five point scale—which signified "exceeds requirements of position." Mr. West and Mr. Young received a three or "meets all requirements of the position."

In 1996, GEL began experiencing financial problems and determined that in order to meet its internal net income commitments to GE, overhead would have to be significantly reduced. In early 1996, and in preparation for possible layoffs, GEL Human Resources ("HR") Manager Dick Suttell[7] prepared a preliminary evaluation of over 450 GEL employees and ranked Keith Young as the lowest rated Grainger National Account Manager, Bob West as next lowest, and Christine Thomas as third lowest.

On November 5, 1996, and as part of a layoff of 4% of GEL's employees division-wide,[8] Stan Davis, was instructed to (1) eliminate 26 salaried C & I sales positions, from 266 to 240 by year end, and (2) reduce controllable overhead costs for 1997 by $1.5 million. The targeted layoff date was the week of November 18, 1996.[9]

As part of the overall layoffs within GEL's C & I sales force, Mr. Davis instructed Ron Cantlie to lay off two Grainger National Account Managers. Mr. Cantlie initially opposed any reduction-in-force ("RIF"), citing the success of the program and the overall performance of the group, but Mr. Davis rejected this attempt to "push back" the layoffs.

GEL uses an established set of written guidelines, including the RIF Identification Matrix, to rank salaried employees for layoffs. The supervisor, in this instance Mr. Cantlie, ranks employees in four categories, which are defined in the RIF Guidelines: Historical Performance, Flexibility, Criticality of Skills, and Company Service. The RIF guidelines provide that rankings are to "be principally based" on the employee's performance over the previous 12 to 24 months. Because the Grainger National Account Manager team had existed for less than two years, Mr. Cantlie also looked at each employee's sales figures from his or her previous position. Mr. Cantlie's undisputed deposition testimony is that he did not use Mr. Suttell's earlier evaluation—of Mr. Young, Mr. West, and Ms. Thomas—in preparing the RIF Identification Matrix and had not even seen it prior to his deposition.

Because Mr. Cantlie was ranking six employees, they were each ranked in each category from I (best) to 6 (worst).[10] Employees with the highest total scores are

---

7. Mr. Suttell was 55 years old in November 1996.

8. The record reflects that throughout the relevant time period, GEL had in excess of 2500 employees.

9. The Plaintiff admits that for a period of weeks or months preceding November 1996, there had been rumors of impending layoffs.

10. Because "Company Service" accounts for one-fourth of the ranking, the RIF Identification Matrix process gives some preference to long-service employees, i.e., the longest service employee is ranked "1" irrespective of performance.

typically eliminated, but the policy does allow for exceptions. On November 7, 1996, Mr. Cantlie completed a RIF Identification Matrix for the six Grainger National Account Managers. His rankings were as follows:

| Name/Region | Historical Performance | Flexibility | Criticality of Skills | Company Service | Total |
|---|---|---|---|---|---|
| Young (San Francisco) | 4 | 4 | 4 | 6 | 18 |
| Lenhart (Charlotte) | 5 | 5 | 5 | 2 | 17 |
| West (Dallas) | 2 | 6 | 6 | 1 | 15 |
| Wilkinson (Chicago) | 6 | 2 | 2 | 4 | 14 |
| Thomas (Atlanta) | 3 | 3 | 3 | 5 | 14 |
| Webster (Cleveland) | 1 | 1 | 1 | 3 | 6 |

Using this system, Keith Young and the Plaintiff had the highest—that is, the worst—total score. As the policy allows, Mr. Cantlie made the decision to retain Mr. Young in San Francisco and lay off Mr. West.[11] However, irrespective of Mr. Cantlie's treatment of Mr. West, Mr. Lenhart was one of the two lowest ranked managers. Mr. Cantlie planned for Mr. Lenhart's Charlotte region to be absorbed by Ms. Thomas in Atlanta. Mr. Cantlie's recommendation to eliminate Mr. Lenhart and Mr. West's positions was reviewed and approved by HR Manager Suttell and by Mr. Davis. Mr. Suttell testified that upon receipt of Mr. Cantlie's RIF Identification Matrix, he "drastically changed" his earlier evaluation.

The only other evidence that Plaintiff offers relating to age discrimination in GEL's decision to terminate him is his unsupported opinion that he was one of the top three Grainger National Account Managers. However, the Plaintiff admitted in his deposition that none of his superiors had ever told him that he was one of the "top three" or that he was better than even one of the other Grainger National Account Managers.

GEL employees identified for elimination are provided a "notice" period, during which the employee receives full pay and benefits but no longer performs his job and, instead, focuses his efforts on finding new employment. Employees with less than ten years of service receive 30 days notice while those with ten or more years of service receive 60 days notice.

Under GEL's RIF Guidelines, a salaried employee with 20 or more years of service is also eligible to receive a Best Possible Offer ("BPO"). A BPO is defined as the most suitable position within GEL that can be identified for the employee during the employee's RIF "notice" period described above. If an employee refuses a BPO, he forfeits all severance pay and benefits.

On November 20, 1996, Ron Cantlie flew to Charlotte and told Mr. Lenhart in person that his position was being eliminated. Mr. Cantlie provided the Plaintiff with information relative to employee benefits and suggested he call Dick Suttell with any further questions. Mr.Lenhart did not perform any more work for GEL beyond November 20, 1996, and began looking for other employment both inside and outside GEL.

Because Mr. Lenhart had more than 27 years of service, his notice period was initially 60 days—through January 31, 1997—but was extended by Mr. Suttell, at Plaintiff's request, through April 4, 1997.[12]

---

**11.** Mr. Cantlie's detailed explanation, attached to the RIF Identification Matrix, establishes that Grainger had a substantial market in the California area, requiring that GEL not lose its presence with its customer in that geographic area.

**12.** The Plaintiff received GEL pay and benefits through that date, as well as outplacement

Mr. Cantlie's layoff letter and a subsequent letter from Mr. Suttell stated that GEL would attempt to identify a BPO for Mr. Lenhart during his notice period. Although Mr. Suttell did assist Mr. Lenhart by contacting several sales HR managers in other GE operating divisions, he was unable to identify a BPO for Mr. Lenhart, not a surprising result during division-wide layoffs.

However, on the same day as his meeting with Mr. Cantlie—November 20, 1996—Mr. Lenhart contacted his former customer, Grainger, about a possible job. In mid-December 1996, he received a firm offer, as a District Sales Manager in Virginia, and started work at Grainger on January 2, 1997.[13] Mr. Lenhart's total annual compensation package with Grainger was the same as or exceeded his annual compensation package at GEL.[14]

Although the Plaintiff contends he maintained "regular contact" with Mr. Suttell, the GEL HR Manager did not learn of Mr. Lenhart's new job with Grainger until March 1997.

On April 21, 1997, after the Plaintiff's extended notice period had expired, Dan Wilkinson resigned his Grainger National Account Manager position in Chicago. The opening was posted within GEL and awarded to Garrett Mock, a GEL sales representative on the West Coast, who was 30 years old when he transferred to Chicago on June 2, 1997.

In the light most favorable to the Plaintiff, he never applied for the Chicago opening because he was unaware of it until after it had been filled. HR Manager Suttell testified in his deposition that he had no "conscious thought process" of considering Mr. Lenhart because the Plaintiff's name simply never crossed his mind. By this time, Mr. Suttell knew that Plaintiff had been working for Grainger since January. Furthermore, the Plaintiff was not regularly contacting anyone at GEL about openings, was no longer working with the GEL outplacement agency, and was not actively looking for employment.

On September 19, 1997, Mr. Lenhart, then a resident of Virginia, filed a charge of discrimination with the Richmond office of the Equal Employment Opportunity Commission ("EEOC") claiming that his November 20, 1996 termination and his failure to get the Chicago Grainger position were each the result of age discrimination. The EEOC concluded that Mr. Lenhart's charge of age discrimination was untimely with respect to his termination claim because it was filed more the 300 days after his termination, but on October 3, 1997, issued the Plaintiff a Notice of Right to Sue letter.[15]

On April 5, 1999, the Plaintiff filed the instant Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging a claim under the Age Discrimination in Employment Act of 1967 ("the ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, as well as a claim under the public policy of North Carolina.

---

services and a lump sum payment of one week for every year of service; in Plaintiff's case, 27 Weeks of pay.

**13.** From January 2 to April 4, 1997, the Plaintiff was on the payroll of both GEL and Grainger.

**14.** The Plaintiff does not seek back pay, but rather lost retirement, stock option, and other benefits in an amount exceeding $600,000.

**15.** The Plaintiff filed his claim 303 days after he was laid off on November 20, 1996. Virginia is a deferral state which provides an employee 300 days from the occurrence of an alleged discriminatory event to file a timely charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); *and* 26 U.S.C. § 26(d)(2).

On May 7, 1999, the Defendant removed the state action to this Court based on federal question jurisdiction. Removal appears to be proper and has not been challenged by the Plaintiff.

On January 16, 2001, Defendant filed its Motion for Summary Judgment which has been fully briefed and is ripe for determination.

On March 21, 2001, the Plaintiff filed a "Motion to File Further Response . . . ." In making its recommendation below, the Court has considered all of the parties' briefs and, having done so, will *grant* the Plaintiff's motion.

## II. *DISCUSSION OF CLAIMS*

### A. *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Accord Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir.1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

### B. *ADEA Unlawful Termination Claim*

#### 1. *Plaintiff Did Not File a Timely Claim with the EEOC*

It is well-settled under the ADEA that this Plaintiff was required to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory activity and prior to filing an action in federal court. *See* 29 U.S.C. § 626(d); *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 200 (4th Cir.1990). "The . . . limitations period for an ADEA action arising out of a job termination commences when the employee is informed of his termination . . . even if he is not then aware of its discriminatory nature." *Olson*, 904 F.2d at 200, *citing Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965 (4th Cir.1982), *and Felty v. Graves–Humphreys Co.*, 785 F.2d 516, 518–19 (4th Cir.1986). *See also Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *and Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

Technically speaking, "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *NAACP Labor Committee of Front Royal*

*v. Laborers' International Union of North America*, 902 F.Supp. 688, 699–700 (W.D.Va.1993), *citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Nonetheless, a failure to file a timely EEOC charge may result in dismissal. "Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.*, 902 F.Supp. at 707–08, *citing Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

This is true even though until April 2, 1997, the end of his extended notice period, the Plaintiff was entitled to a BPO if one had become available. *Accord Lawson v. Burlington Indus.*, 683 F.2d 862, 863–64 (4th Cir.1982) (plaintiff's optimistic hope that he would be rehired during 270 day recall period does not toll the statute of limitations for filing an EEOC claim on his layoff).

■ Notwithstanding the Plaintiff's argument to the contrary, he had definite notice of his termination on November 20, 1996, when Mr. Cantlie told him face-to-face that he was being "let go." *Accord Ricks*, 449 U.S. at 258, 101 S.Ct. 498. Clearly, Mr. Lenhart understood that he was being terminated on November 20, 1996, because he called Grainger asking for a job that very night. Additionally, he ceased doing any work for GEL on November 20, 1996, and instead devoted his time to finding a new job. Moreover, the Plaintiff began work at Grainger on January 2, 1997—some 4 months before his BPO eligibility technically expired.

In short, the Plaintiff did not file a timely EEOC claim as to his termination on November 20, 1996, and summary judgment should be granted as to his ADEA termination claim for this reason alone.

### 2. Plaintiff's Claim Fails to State a Material Issue of Material Fact

■ Even assuming *arguendo* that the Plaintiff did file a timely EEOC claim, he has failed to raise an issue of material fact as to the merits of his termination claim under the ADEA, which prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

■ In order to prove an ADEA claim, an employee may proceed under ordinary principles of proof using direct or indirect evidence, or under the paradigm for indirect proof of employment discrimination set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Burns v. AAF–McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (applying *McDonnell Douglas* framework in ADEA context). To overcome a summary judgment motion based upon direct or indirect evidence of discrimination, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir.1999), *quoting Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988). The plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.,citing Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995). The Plaintiff admitted in his deposition that he had no direct evidence of age discrimination. However, in the absence of such evidence, "the plaintiff may nevertheless proceed under *McDonnell Douglas.*" *Id.*

■ Generally speaking, under *McDonnell Douglas*, if the employee establishes a prima facie case of illegal discrimination (as discussed below), then the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its employment decision. 411 U.S. at 802, 93 S.Ct. 1817. If the employer does so, the presumption of discrimination "drops from the case" and the employee must demonstrate that the employer's stated reason for its action was in fact a pretext for improper discrimination. *Id.* at 804, 93 S.Ct. 1817.

The Supreme Court has made clear that the plaintiff at all times "bears the ultimate burden of proving ... intentional discrimination." *Runnebaum v. NationsBank of Maryland*, 123 F.3d 156, 164 (4th Cir.1997) (en banc), *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that a prima facie case plus disbelief of employer's asserted justification for employment action is not necessarily sufficient to establish a violation and that, in such cases, summary judgment is appropriate unless the plaintiff presents adequate evidence that the employer unlawfully discriminated). However, in *Reeves*, the Supreme Court recently held that:

> a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false,

*may* permit the trier of fact to conclude that the employer unlawfully discriminated. This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability.

530 U.S. at 147–48, 120 S.Ct. 2097 (emphasis added).[16] *Accord Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir.2000) ("In *Reeves* the Supreme Court held that when a plaintiff establishes a prima facie employment discrimination case and that his employer's explanation is pretextual, this does not automatically create a jury question, but it may do so.")

■ The case law regarding the elements of a prima facie case under the ADEA has been evolving somewhat since the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). The Fourth Circuit recently modified its previous prima facie standard [17] for ADEA claims brought in context of a reduction in force, holding:

> [i]n response to *O'Connor*, therefore, we modify the *Mitchell* formulation of a prima facie case of age discrimination, in the context of a reduction in force where performance is the announced basis for selection, to require a showing by the employee that: (1) he was protected by the ADEA; (2) he was selected for dis-

---

**16.** The Court did not "squarely address whether the *McDonnell Douglas* framework, developed to assess claims brought under ... Title VII ... also applies to ADEA actions. Because the parties do not dispute the issue, we shall assume, *arguendo*, that the *McDonnell Douglas* framework is fully applicable [to an ADEA claim]." *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097. *See also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Likewise with *Reeves*, the instant parties agree that the *McDonnell Douglas* framework applies to Plaintiff's ADEA claim.

**17.** Under *Mitchell v. Data Gen'l Corp.*, 12 F.3d 1310 (4th Cir.1993), the elements of a prima facie case of age discrimination applicable in the context of a reduction in force were: "(1) the employee was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) *the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which he was performing.*" *Id.* at 1315 (emphasis added).

charge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing.

*Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir.2000).

■ Applying the foregoing principles in the instant case, Plaintiff's evidence is sufficient to state a prima facie case of age discrimination claim. The Defendant concedes that the Plaintiff's evidence meets the first three elements, that is, that he was (1) 49 years old when (2) he was discharged and that (3) he was working at a level equal to the other Grainger National Account Managers. *See* Defendant's "Memorandum in Support" at 13 (document # 24). The only disputed element of the prima facie case is whether "the process of selection produced a residual work force including some persons in the group who were substantially younger than [the Plaintiff] who were performing at a level lower than that at which he was performing." *Stokes*, 206 F.3d at 430. In the light most favorable to the Plaintiff, he was chosen, along with Don West, from a group of six employees to be discharged. One of the four employees who was retained—Keith Young, age 33—was substantially younger than the Plaintiff and, according to the RIF matrix, as well as earlier evaluations, was performing at a lower level than the Plaintiff.

■ However, even though the Plaintiff has made out a prima facie case of age discrimination, GEL has offered evidence that the Plaintiff's position was eliminated in a division-wide reduction in force. In other words, the Defendant has met its burden of production at this stage in the analysis by clearly "articulat[ing] some legitimate, non-discriminatory reason for its employment decision." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. In contrast to Plaintiff's showing as to a prima facie case, he is unable to establish that GEL's stated reason was "merely pretextual" and carry his "ultimate burden of proving intentional discrimination." *Runnebaum*, 123 F.3d at 164, citing, *St. Mary's Honor Ctr.*, 509 U.S. at 506–11, 113 S.Ct. 2742.

■ At the outset, the undersigned notes that it is undisputed that the Plaintiff was discharged, along with Bob West and 24 other GEL C & I sales employees, as part of a division-wide RIF effecting 4% of all GEL employees. Economic hardship resulting in layoffs can be, as a matter of law, a legitimate, non-pretextual reason for reductions-in-force. *Accord Rowe*, 233 F.3d at 830 (holding employer's RIF was valid, non-pretextual reason for discharge); *and Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 513 (4th Cir.1994) ("the ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges"). Nor is it the Court's role to act as GEL's "super-personnel department." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). *Accord Evans v. Technologies Applications & Services Co.*, 875 F.Supp. 1115, 1120 (D.Md.1995).

It is further established that GEL treated age neutrally, that is, that two of the four retained Grainger National Account Managers were older then the Plaintiff, and the third, Ms. Thomas, who absorbed the Plaintiff's area, was only one year younger. With the exception of Mr. Young, all of the Grainger National Account team were over 40 when they were promoted by Mr. Davis and Mr. Cantlie to their newly created positions. *Accord Causey v. Balog*, 162 F.3d 795, 800 (4th

Cir.1998) (employer's neutral treatment of age supports its stated nondiscriminatory reasons for eliminating plaintiff's position); *and Proud v. Stone*, 945 F.2d 796, 798 (4th Cir.1991) ("employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing").

Despite the Plaintiff's assertion that Mr. Davis saw older employees as "traditional rather than contemporary," it is undisputed that Mr. Cantlie, not Mr. Davis, was the decision-maker in the Plaintiff's discharge. *Accord Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir.1998) (motivation of the actual decision-maker is most relevant to the question of alleged discrimination). Furthermore, the Plaintiff has not supplied any context or connection for these comments such that they could be anything more than "stray remarks." *Accord Dockins v. Benchmark Communications*, 176 F.3d 745, 748 (4th Cir.1999) (to be discriminatory, remarks must be more than merely stray isolated comments); *Birkbeck*, 30 F.3d at 511–12 (isolated comment of "there comes a time when we have to make way for younger people" insufficient to support a finding of age discrimination); *EEOC v. Clay Printing*, 955 F.2d 936, 942–943 (4th Cir.1992) (when comments are used to support allegations of discrimination, plaintiff must demonstrate the nexus between the comments and the discriminatory action); *and Ullman v. Univ. of Virginia*, 996 F.Supp. 557, 562 (W.D.Va.1998).

Lastly, Mr. Cantlie made an obviously difficult decision according to GEL policy, basing his decision "principally" on the employees' almost 24 month history on the Grainger team. The fact that Mr. Suttell, who was not the key decision-maker, had one year earlier ranked Ms. Thomas and Mr. Young, as well as Mr. West, below the Plaintiff, does not cast a pretextual shadow on Mr. Cantlie's decision. *See Rowe*, 233 F.3d at 831 (RIF layoff of sales employee was valid, even though decision-maker and a higher supervisor could not agree on criteria used to select plaintiff for RIF and where decision admittedly rested on geographic rather than performance considerations.)

In short, the Plaintiff has not created a material issue of fact as to the Defendant's decision to discharge him as part of an overall reduction in force. Accordingly, the undersigned will respectfully recommend that the Defendant's motion be granted as to the Plaintiff's termination claim.

### C. *ADEA Failure to Rehire Claim*

Mr. Lenhart also claims that GEL's decision, on June 2, 1997, to fill Dan Wilkinson's Grainger National Account Manager position in Chicago with Garrett Mock (age 30) was in violation of his rights under the ADEA. As with his termination claim, the Plaintiff has no direct evidence that GEL failed to rehire him because of his age. Therefore, the *McDonnell Douglas* scheme for indirect proof, as discussed above and as clarified in ADEA claims by *O'Connor* and *Stokes, supra*, applies. *Accord Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239–41 (4th Cir.1982).

Assuming *arguendo* that the Plaintiff has stated a prima facie case of age discrimination in his failure to rehire claim, GEL has offered evidence that Plaintiff was not rehired because he did not apply for the position; that his notice period and entitlement to a BPO had expired; that he was no longer seeking a position at GEL; and that, indeed, he had been working at Grainger for over four months. In other words, the Defendant has met its burden of production at this stage in the analysis by clearly "articulat[ing] some legitimate, non-discriminatory reason[s] for its employment decision."

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. In contrast to Plaintiff's showing as to a prima facie case, he is unable to establish that GEL's stated reasons were "merely pretextual" and carry his "ultimate burden of proving intentional discrimination." *Runnebaum,* 123 F.3d at 164, citing, *St. Mary's Honor Ctr.,* 509 U.S. at 506–11, 113 S.Ct. 2742. Indeed, the Plaintiff concedes that "but for" GEL's "suspicious conduct" at the time of Mr Lenhart's termination—in November 1996—the Defendant's Motion for Summary Judgment on the rehire claim would be "a close issue." *See* "Plaintiff's Response . . ." (document # 28) at 14.

Despite the Plaintiff's contentions to the contrary, the GEL policy clearly provided for a 60 day notice period, which Mr. Suttell extended to April 2, 1997, during which the Plaintiff was entitled to a BPO. There is no evidence that anyone had knowledge of Mr. Wilkinson's resignation prior to April 21, 1997—three weeks after the Plaintiff's *extended* notice period and BPO rights expired.

Moreover, HR Manager Suttell's deposition testimony is uncontradicted that the Plaintiff's name simply never crossed his mind and that he certainly never had a "conscious thought process" regarding Mr. Lenhart. Furthermore, the Plaintiff was not regularly contacting anyone at GEL about openings, was no longer working with the GEL outplacement agency or actively looking for employment, and, in fact, had been working at Grainger since January 3, 1997.

In short, the Plaintiff has not established a material issue of fact as to GEL's failure to rehire him and, accordingly, the undersigned will recommend that the Defendant's Motion for Summary Judgment be *granted* as to this claim.

### D. *State Law Claims*

Mr. Lenhart has also pleaded, with identical facts as his federal claims, a state law wrongful discharge claim, based on an alleged violation of North Carolina's public policy against age discrimination, as expressed in the Equal Employment Practices Act, N.C.Gen.Stat. § 143–422.2 ("NCEEPA"):

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

In evaluating state law discrimination claims, the North Carolina Supreme Court "look[s] to federal decisions for guidance in establishing evidentiary standards and principles of law." *North Carolina Dept. of Correction v. Gibson,* 308 N.C. 131, 301 S.E.2d 78, 82 (1983). *See also Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995); *and Bannerman v. Burlington Indus., Inc.,* 7 F.Supp.2d 645 (E.D.N.C.1997). Following the clear logic of *Gibson,* the Fourth Circuit has held that federal standards should be used "in evaluating a state claim under § 143–422.2." *Hughes,* at 1383.

In short, for the reasons that the Plaintiff's federal claims fail, summary judgment is also appropriate to the Plaintiff's state law claim as well.

### IV. *ORDER*

**NOW THEREFORE, IT IS ORDERED:**

Plaintiff's "Motion to File Further Response . . ." (document # 34) is **GRANTED.**

## V. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that "Defendant's Motion for Summary Judgment" (document # 23) be **GRANTED** and that the Complaint be **DISMISSED WITH PREJUDICE**.

## IV. *NOTICE OF APPEAL RIGHTS*

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to *de novo* review by the district court, *Ridenour*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841, 845–46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; *and to the Honorable Richard L. Voorhees.*